# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

**Female Athletes United,**

Plaintiff,

**v.**

**Keith Ellison,** in his official capacity as Attorney General of Minnesota; **Rebecca Lucero,** in her official capacity as Commissioner of the Minnesota Commission on Civil Rights; **Erich Martens,** in his official capacity as Executive Director of the Minnesota State High School League; **Willie Jett,** in his official capacity as the Minnesota Commissioner of Education; **Independent School District No. 11 School Board; Independent School District No. 192 School Board; Independent School District No. 279 School Board,**

Defendants.

Case No. 0:25-cv-02151-DWF/SGE

**Declaration of Kristi Burton Brown in Support of Plaintiff's Motion for Preliminary Injunction**

I, Kristi Burton Brown, under penalty of perjury, declare as follows:

1. I am over the age of 18, of sound mind, and otherwise competent to sign this declaration. I have personal knowledge of the information below.

2. I am the Chairman of the Board of Directors of Female Athletes United, also known as FAU.

***Female Athletes United Background***

3. Female Athletes United is an Internal Revenue Code Section 501(c)(3), membership organization incorporated in Texas and formed for the purpose of defending women's sports, ensuring that women and girls have equal opportunities, and guaranteeing that women compete on a fair and safe playing field. Simply put, FAU promotes girls' and women's right to not compete against males who identify as females on girls' and women's sports teams. FAU also upholds the rights of women and girls to privacy in their locker rooms, restrooms, and other intimate spaces, as these protections are integral to their ability to participate in athletics.

4. FAU was founded in November 2023 to respond to the growing trend of males who identify as females entering women's sports. The founding officials of FAU watched as males identifying as females stole women's opportunities to advance, earn scholarships, be champions in their own sports, and in some cases, watched female athletes get injured by competing against male athletes.

5. At FAU, we publicly advocate for women's sports and seek to ensure women's sports remain or return to being women-only. FAU is a coalition of prospective, current, and former female athletes and also coaches, family members, and others who want to ensure that women's and girls' sports remain a place for only women and girls. Many of FAU's members are female athletes who currently compete on their girls' sports teams at public schools that receive Title IX funding.

6. The prospective and current athlete members do not want to be forced to compete against male athletes, because male athletes have a physical advantage over female athletes.

7. FAU also has male and female members who care about the existence of female sports. They want to make sure that women's sports teams are not eliminated as men are being permitted to play on women's and girls' sports teams.

8. Several FAU members are parents of current and former female athletes. These members supported their daughters throughout their athletic careers. They saw the benefits women's sports had on their daughters, and they want to ensure that future generations of women and girls will have the same equal opportunities their own daughters experienced in sports.

9. When FAU members sign up as members, they can input their background information about why they feel passionate about women's sports. Board members review this information when they check FAU's membership.

***FAU's Founding Board Members***

10. I am the Chairman of the Board, and I founded FAU to protect women's sports. As the Board Chairman, I am familiar with the biographies of the other FAU board members.

11. I have spent time and effort in my professional life working to protect women's sports.

12. From childhood through junior high, I competed in figure skating. Figure skating shaped my childhood, and I learned many valuable lessons from competing in such an intense sport.

13. I am a constitutional law attorney, focusing on First Amendment and equal-protection issues. I am admitted to the Bar of the U.S. Supreme Court. I was honored to submit an amicus brief to the U.S. Supreme Court on behalf of dozens of female athletes to defend women's rights in sports in *West Virginia, et al. v. B.P.J.*

14. I want to protect women's sports for the next generation, specifically for my daughter who is involved in dance.

15. The other two founding members of the board are invested in protecting women's sports. Michele Hadley is the President and Treasurer of FAU and grew up in a family that was very involved in soccer.

16. She competed in travel soccer and on softball teams for many years. She was a four-sport varsity athlete in soccer, softball, cross country, and track. Michele chose soccer as her one love and received a scholarship to play soccer at the University of Central Arkansas. Michele led the school's Division 1 women's soccer team as its captain, won a championship ring her senior year, and helped the team secure an undefeated record in the regular season.

17. As a former college athlete, Michele is passionate about protecting girls who seek to compete fairly in their sport. Michele's family is deeply involved in female sports: her dad and brother coach girls' softball teams, her mother is a sports-recruiting consultant, and her sister is a college softball coach.

18. Sandra Bucha is the Secretary for FAU. She was a nationally and world-ranked age group swimmer during her swimming career. She became an American record holder and national champion. Sandra was allowed to train with the boys' swim team at Hinsdale Central High School during the 1968–1972 high school seasons as there were no organized sporting activities for girls during that time.

19. Sandra recognized the discrimination all female athletes in high school faced because she lacked opportunities during those years. With the assistance and encouragement of her parents and coach, Sandra filed suit against the Illinois High School Association in federal court. The court's opinion in *Sandra Lynn Bucha, et al. v. Illinois High School Association, et al.,* United States District Court, N.D. Illinois, E.D. 72 C 378 (Opinion issued November 15, 1972) was a precursor of things to come as Title IX of the Civil Rights Act, and several amendments were soon thereafter enacted. Although Sandra did not personally prevail in her independent action, the case was cited often in subsequent legal cases.

20. Sandra was a finalist in the 1972 Olympic trials and narrowly missed making the 1972 Olympic team. While attending Stanford University, Sandra embarked on her professional marathon swimming career. She joined the

professional marathon swimming circuit in the summer of 1973 and for the next three years, competed in nine marathon swims.

21. She was undefeated as the first female in all her marathon swims, consistently placing second overall to International Swimming Hall of Fame (ISHOF), John Kinsella, earning her a place in the ISHOF, class of 2014.

22. Her accomplishments in the water and as a women's advocate helped pave the way for thousands of girls and women to participate in sports, the acceptance of women in the male-dominated sport of marathon swimming, and for marathon swimming to become an Olympic sport.

23. The FAU board members founded FAU to respond to the growing number of males participating in women's sports. In reaction to these numerous instances and given our background in advocating for female athletes, we decided to start an organization that would address these concerns.

24. When we started our organization, we expended time and resources, and we had a website created for members to join and to share our purpose. Our website can be found at https://www.femaleathletesunited.org/.

***Organizational structure and purpose of FAU***

25. One purpose of FAU, and one reason members join FAU, is FAU provides legal cover for its members to speak about the issues mentioned above. FAU speaks on behalf of its members and provides anonymity for some female athletes.

26. I have active and general supervision over FAU. I have knowledge of the operations and circumstances of FAU's members with respect to their commitment to FAU's values, and to the impact of the laws and policies challenged in this case by FAU's members.

27. The board is responsible for increasing FAU membership and advocating for FAU's positions. In my experience, members join FAU because they share FAU's mission.

28. FAU is a membership organization formed to defend equal opportunity, fairness, and safety in women's and girls' sports. FAU members oppose allowing males to compete in female sports because males have inherent physical advantages that make competing against females unfair and often unsafe. They also advocate for privacy in women's intimate spaces as this is an essential aspect of athletic participation.

29. Part of the FAU advocacy and educational mission includes taking action against the major developments that will affect our members' educational opportunities.

30. Some of our members are female athletes at public schools who have been forced to compete against males in their events.

31. Thankfully, other FAU members have been protected from unfair competition against males.

32. As an organization, FAU exists to protect women and women's sports by ensuring that only women compete in women's sports.

33. FAU was a plaintiff in a case challenging the Biden Administration's Title IX rule, which would allow males who identify as girls or women to be on girls' sports teams and use their intimate facilities at school. FAU was successful at helping the plaintiffs win an injunction, which protected the schools of FAU members from the mandates of the rule. *See Kansas v. United States Dep't of Educ.*, 739 F. Supp. 3d 902, 918–19 (D. Kan. 2024) ("FAU is concerned that its members will lose their scholarships, privacy, and freedom of speech. Based on this review, the court finds that the interests at stake are relevant to the Plaintiff

Organizations' purposes.")

***FAU's Members***

34. FAU has members in states across the country, including members located and competing on girls' sports teams for their public schools in Minnesota.

35. We also have members in numerous other states including: Arizona, California, Colorado, Connecticut, Georgia, Idaho, Illinois, Kansas, Maine, Maryland, Michigan, Missouri, Nevada, New York, North Carolina, Oregon, Pennsylvania, Texas, Utah, Virginia, Washington, West Virginia, Wisconsin, and Wyoming. Many of these members attend public schools in their state and some compete in girls' sports through their schools.

36. I can confirm that E.G., E.P., and M.S., identified in the Motion for a Preliminary Injunction, are members of FAU and that based on their membership forms, they are female athletes who attend public schools in Minnesota.

37. And according to the information E.G., E.P., and M.S. submitted to FAU, they are female athletes who compete on girls' sports teams for their public schools in Minnesota and have or are likely to compete against a male athlete as part of their participation in girls' school sports.

***The Minnesota law and the Executive Orders***

38. FAU is committed to challenging laws and policies that deprive women and girls of fairness and safety in their sports and privacy in their intimate facilities, as guaranteed by Title IX.

39. Currently, Minnesota's Attorney General has declared in a formal opinion that Minnesota requires that schools allow males to compete on girls' sports teams. This policy applies regardless of age, testosterone level, or level of competition. Because of this, girls and women across Minnesota may be subject to competing against males in girls' and women's sports.

40. Earlier this year, President Trump signed two executive orders protecting female students' privacy and athletic opportunities: *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government* and *Keeping Men Out of Women's Sports*.

41. The executive orders take positions that protect FAU members, like E.G., E.P., and M.S. from being forced to compete against males for a spot on the girls' teams at their own public schools and also from competing against male athletes from other public-school teams as part of their participation in school sports.

42. After President Trump issued the executive order clarifying that Title IX protects girls' sports, Minnesota's Attorney General Keith Ellison published a written opinion stating that Minnesota law requires schools to allow students to participate in sports based on their declared gender identity, without regard for their sex. This jeopardizes the rights of girls to enjoy safe and fair competition in school sports.

43. In April 2025, Minnesota brought a lawsuit against the federal government challenging the lawfulness of Executive Orders *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government* and *Keeping Men Out of Women's Sports* and reasserting that Minnesota's Human Rights Act requires participation in athletics and use of intimate spaces based on how students identify their gender, not on the student's sex.

44. Title IX protects women and girls in their sports and intimate spaces and Minnesota school districts are subject to Title IX's requirements.

# DECLARATION UNDER PENALTY OF PERJURY

I, Kristine Brown, a citizen of the United States and a resident of the State of Colorado, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed this 14th day of May, 2025 at Douglas County Colorado.

Kristine G. Brown

Kristine Brown