UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Female Athletes United, | Case No.: 25-cv-2151 (ECT/DLM) |
| Plaintiff, | |
| v. | **ORDER** |
| Keith Ellison *et al.*, | |
| Defendants. | |

This matter is before the Court on State Defendants'[1] request for expedited discovery (Doc. 43), to which Plaintiff Female Athletes United ("FAU") has filed its response in opposition (Doc. 50). State Defendants ask this Court to allow expedited discovery before preliminary injunction proceedings in order to: (1) evaluate the standing of FAU's members (and accordingly, FAU itself) to proceed with this lawsuit; and (2) provide a fair and fulsome response to the lengthy expert declaration FAU filed in support of its motion for a preliminary injunction. (*See generally* Doc. 43.) State Defendants proffered their proposed discovery requests to the Court, which include requests directed toward FAU as well as three of its members. (*See* Doc. 43-1.)

---

[1] Both parties refer to the movants as "State Defendants," which the Court understands to include Attorney General Keith Ellison in his official capacity; Commissioner of the Minnesota Department of Human Rights Rebecca Lucero in her official capacity; Minnesota State High School League Executive Director Erich Martens in his official capacity; and Minnesota Department of Education Commissioner Willie Jett in his official capacity. *See generally* Docket. The Court will adopt the parties' nomenclature. Attorneys for the remaining independent school district defendants have neither signed State Defendants' pleading nor indicated they seek to join State Defendants' request for expedited discovery. (Doc. 43.)

Having reviewed State Defendants' proposed discovery requests and the parties' submissions, the Court grants in part and denies in part State Defendants' motion. State Defendants may propound proposed Interrogatory No. 1 and proposed Document Request No. 1 of State Defendants' Discovery Requests to Plaintiff (Doc. 43-1 at 7-8). State Defendants' request for discovery beyond these limited inquiries, and directed to parties other than Plaintiff, is denied.

## BACKGROUND

Female Athletes United ("FAU") filed this lawsuit on May 19, 2025. (Doc. 1.) FAU is a nonprofit Texas-based corporation running a national membership "organization that advocates for fairness, safety, and equal opportunity for women and girls in sports" and includes members in Minnesota playing high-school sports. (*Id.* ¶¶ 1, 10–11, 13.) FAU alleges that Minnesota has a policy of permitting "biologically male" students who identify as female in gender to compete in women's and girls' sports. (*Id.* ¶¶ 2, 11.) As a result, FAU claims "biologically female" athletes who identify as female in gender and play softball in Minnesota are harmed by "experiencing fewer opportunities to play, win, advance, and receive recognition" and "suffer[ing] the mental burden of knowing that their rights are secondary." (*Id.* ¶¶ 4, 136.) According to FAU, this amounts to unequal treatment and "subverts the purpose and requirements of Title IX" as confirmed by presidential executive order and by several letters sent to Minnesota officials by Attorney General Pam Bondi and the United States Department of Justice ("DOJ") earlier this year. (*Id.* ¶¶ 5, 166, 171–72.) Plaintiff claims Minnesota has refused to follow Title IX's requirements despite being on notice of its noncompliance. (*Id.* ¶¶ 167–69, 179.) FAU therefore sues on behalf

2

of its members Minnesota's Attorney General Keith Ellison, Commissioner of the Minnesota Department of Human Rights Rebecca Lucero, Executive Director of the Minnesota State High School League Erich Martens, Minnesota Education Commissioner for the Minnesota Department of Education Willie Jett, Independent School District No. ("ISD") 11 as the governing board for public schools in Anoka and Hennepin Counties, ISD 192 as the governing board for public schools in Dakota County, and ISD 279 as the governing board for public Osseo Area Schools in Hennepin County. (*Id.* ¶¶ 40, 43, 47, 58, 61, 68, 75.) It brings two counts in its complaint under Title IX for sex discrimination based on "failing to provide effective accommodation to the interests and abilities of female athletes" (Count I), and "failing to provide equal treatment, benefits, and opportunities for female athletes" (Count II). (*Id.* ¶¶ 178–91.) To right this alleged wrong, FAU generally seeks declaratory and injunctive relief, as well as nominal damages and fees. (*Id.* at 42–44 ¶¶ 1–10.)

This discovery dispute springs from the injunctive relief that Plaintiff seeks. Plaintiff's complaint asks for the relief of "[a] preliminary and permanent injunction" that precludes biologically male athletes from female sports team participation, requires Defendants to declare such biological males ineligible from such participation, precludes Defendants from enforcing any contrary Minnesota law on this issue, and requires Defendants to apply such preclusions and requirements going forward into the future. (*Id.* at 43 ¶ 4.) The day after filing its complaint, Plaintiff filed a Motion for a Preliminary Injunction seeking these prelusions and requirements in a preliminary form. (Doc. 6 at 2.)

3

The motion is currently in the briefing stages and is set to be heard by Judge Tostrud on August 20, 2025. (Doc. 37.)

In support of its Motion for a Preliminary Injunction, Plaintiff filed the declaration of Kristine Brown, the Chairman of the Board of Directors of FAU. (*See generally* Doc. 8-1.) Ms. Brown indicated that FAU is a member-based organization that, among other things, engages in litigation to advance its positions regarding the role of gender in sports. (*Id.* ¶¶ 28, 33, 38–44.) FAU's membership includes E.G., M.S., and E.P., the Minnesota high-school athletes whose allegations serve as the basis for FAU's claim of harm in the underlying lawsuit. (*Id.* ¶¶ 36–37.) FAU also included declarations from E.G., M.S., and E.P. with its preliminary injunction motion papers. (*See generally* Docs. 8-3, 8-4, 8-5.) In each of their declarations, these individuals indicate they are high-school aged athletes; are members of FAU; and have competed with or against a transgender softball player; and have been harmed because of their belief this softball player has unfair advantages against each of them. (*Id.*) Finally, FAU included a declaration from Dr. Gregory Brown which it labeled as an "Expert Declaration" which is approximately 150 pages long and includes an additional 22-page bibliography. (Doc. 8-2.)

On June 18, 2025, State Defendants filed a Memorandum of Law in Support of State Defendants' Motion for Expedited Discovery Relating to Standing.[2] (Doc. 43.) In its pleading, State Defendants assert they need "targeted discovery" in order to test whether

---

[2] Despite the title of this document, no actual motion was filed with the Court. However, given the parties' pre-submission conference and the body of the memorandum itself, FAU had fair notice of the substance of State Defendants' request for discovery.

4

FAU has overcome the jurisdictional threshold for standing, and further request discovery related to Dr. Brown's declaration. (*Id.* at 1.) State Defendants included their proposed discovery requests for FAU, as well as requests to the individual FAU members referenced in the complaint as follows:

- 5 Interrogatories and 2 Document Requests directed at FAU (Doc. 43-1 at 2 through 8);
- 29 Interrogatories and 7 Document Requests directed at M.S. (Doc. 43-1 at 9 through 21);
- 28 Interrogatories and 7 Document Requests directed at E.G. (Doc. 43-1 at 22 through 34); and
- 28 Interrogatories and 7 Document Requests directed at E.P. (Doc. 43-1 at 35 through 46).

FAU resists State Defendants' request for expedited discovery entirely. (Doc. 50.) According to FAU, State Defendants' standing argument fails because the preliminary injunction motion is about whether FAU members must play softball with a transgender student athlete, something that is ascertainable through the verified complaint and declarations already submitted. FAU also notes that despite State Defendants' characterization of their requests as "targeted," the actual requests are wide ranging, seek discovery from nonparties, and already include more interrogatories than contemplated by the Federal Rules of Civil Procedure for a whole case. As for the request for expert discovery, FAU claims that such discovery is unnecessary because Dr. Brown's declaration is self-contained; that is, it lists the sources of information State Defendants would seek in discovery within the body of the document itself.

This dispute is now fully briefed and the Court proceeds to review the parties' positions.

5

## DISCUSSION

"The general rule is that a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." *Midwest Sign & Screen Printing Supply Co. v. Dalpe*, 386 F. Supp. 3d 1037, 1057 (D. Minn. 2019) (citation omitted). Sometimes, however, expedited discovery is appropriate for limited purposes, such as when a party is seeking injunctive relief. *Id.* In such circumstances, courts "usually apply the 'good cause' standard" to decide whether the need for expedited discovery outweighs the prejudice to the responding party. *Council on American-Islamic Relations-Minn. v. Atlas Aegis, LLC*, 497 F. Supp. 3d 371, 380 (D. Minn. 2020). Factors include: "(1) the existence of a motion for preliminary injunction; (2) the breadth of the request for discovery; (3) the purpose for the request; (4) the burden of compliance; and (5) how far in advance of the usual discovery process the party made the request." *Id.*

Here, there is a motion for a preliminary injunction pending, and this factor weighs in favor of expedited discovery, albeit slightly. Motions for a preliminary injunction in this Circuit are governed by the factors set forth in *Dataphase Sys. v. C.L. Sys.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). In determining whether the extraordinary remedy of a preliminary injunction should issue, courts consider: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that [the] movant will succeed on the merits; and (4) the public interest." *Minn. State Coll. Student Ass'n, Inc. v. Cowles*, 620 F. Supp. 3d 835, 853 (D. Minn. 2022) (quoting *Sleep No. Corp. v. Young*, 33 F.4th 1012, 1016 (8th Cir. 2022) (in turn quoting *Dataphase*, 640 F.2d at 113)).

Certainly, some discovery related to the threat of irreparable harm might be relevant to the Court's preliminary injunction decision. *See, e.g.*, *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987) ("The failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction, for '[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.'" (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974)). But this is not what State Defendants are seeking, at least not directly. They seek discovery on the question of FAU's standing to bring suit at all.[3] (Doc. 43 at 1–2, 5.)

As an organization, FAU may invoke standing on behalf of its affected members. This is interchangeably called representational, associational, or organizational standing. *See, e.g.*, *Students for Fair Admissions, Inc., v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023). To invoke this type of standing, an organization must show: (1) its members could sue in their own right; (2) the interests the organization seeks to protect are relevant to its purpose; and (3) the claims asserted do not require individual member participation. *Id.* Not all members must have standing for the organization to move forward; "when it comes to showing associational standing, one injured member is enough." *Minn. Chamber of Commerce v. Choi*, 765 F. Supp. 3d 821, 836 (D. Minn. 2025). Still, a claim for prospective relief requires allegations of ongoing harm, *Becker v. N. Dakota Univ. Sys.*, 114 F.4th 592, 595 (8th Cir. 2024), and a party's burden to prove a

---

[3] State Defendants assert that standing discovery informs the Court's determination of Plaintiff's likelihood of success. (Doc. 43 at 1-2.)

redressable injury increases "at the successive stages of the litigation," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Here, Plaintiff's declarations adequately address the standing issue, at least at the preliminary injunction stage. Taken together, they establish that FAU is a member-based organization focused on the rights of certain female student athletes; its members include E.G., M.S., and E.P., each of whom was a female student athlete last academic year; each of those individuals competed with and/or against a transgender student athlete whose performance is alleged to have caused harm to these individual FAU members by virtue of this athlete playing sports; and, at least for E.G., that she anticipates being similarly harmed in the future. (*See generally* Docs. 8-1, 8-3, 8-4, and 8-5; *see also* Doc. 8-3 ¶¶ 48–52 (E.G. statement of future harm).) So while the Court agrees that the pendency of a preliminary injunction motion may support some limited discovery, at this stage, extensive discovery related to organizational standing would be inappropriate.

Which brings the Court to the next issues—the breadth of discovery sought, the purpose of such discovery, and the burden of compliance. State Defendants claim to need "targeted discovery" limited to two discrete issues: FAU's standing and its expert declaration. But State Defendants' proposed discovery includes interrogatories it seeks to propound on three *nonparty* FAU members, with wide ranging topics such as their heights and weights, their workout regimens, and all their social media account information. (*See* Doc. 43-1 at 15, 18, 28, 30, 31, 41, 43, 44.) For two of these nonparties, State Defendants seek to propound 28 interrogatories; for the other nonparty, 29 interrogatories. *Compare* Fed. R. Civ. P. 33(a) (setting presumptive limit of 25 interrogatories per party). This is

8

hardly targeted. The topics are broad, the subjects are not parties to this lawsuit, and the purpose of most requests do not even appear directly related to State Defendants' standing arguments. Weighing the nonparties' burden of compliance against the utility of such discovery, each of these factors—breadth, purpose, and burden—prevails against the limited relevance such discovery may have on the Court's standing analysis.

Finally, although not determinative, the timing of the expedited discovery requests slightly favors State Defendants. FAU complains that the discovery requests come well before discovery would normally start, factoring in preliminary injunction proceedings and a potential motion to dismiss. That is true. But it has long been recognized that developing an evidentiary record before a preliminary injunction hearing may "better enable the court to judge the parties' interests and respective chances for success on the merits." *Edudata Corp. v. Sci. Computers, Inc.*, 599 F. Supp. 1084, 1088 (D. Minn. 1984).

Having weighed each of these factors, the Court finds that there is no good cause for State Defendants' proffered expedited discovery to nonparty FAU members. Standing can be determined at this stage of the litigation through the pleadings and declarations already before the Court. Any limited utility from discovery regarding each nonparty member's specific harm[4] is offset by the wide ranging and burdensome discovery State Defendants are seeking. And it is not the Court's province to rewrite State Defendants'

---

[4] Again, the Court respectfully disagrees with State Defendants that inquiry into FAU members' particularized harm concerns standing at this stage, given the verified complaint and member declarations. The utility referenced here is in developing the record on each member's harm in order to conduct a *Dataphase* analysis.

nonparty discovery requests to make them more reasonable. As such, State Defendants' request to propound expedited discovery on nonparties is denied.

The Court now briefly turns to discovery State Defendants seek to propound on FAU directly. State Defendants here request leave to submit five interrogatories and two requests for production of documents. (Doc. 43-1 at 7–8.) The first interrogatory asks FAU to "[i]dentify all members who you allege grant you organizational standing." (*Id.* at 7.) The remaining four interrogatories ask how FAU recruits members, how nonparties M.S., E.G., and E.P. became members, and how FAU identifies transgender athletes in Minnesota. (*Id.*)

Interrogatory No. 1 is narrow, limited, and seeks relevant information that will assist the Court's analysis at further proceedings. As such, State Defendants' request for expedited discovery is granted as to this interrogatory. The remaining four interrogatories, however, appear to have very little to do with standing or the merits of this matter at the preliminary injunction stage or any other. As such, the Court will not allow expedited discovery on Interrogatory Nos. 2–5.

Lastly, the Court addresses State Defendants' requests for production of documents. The first of these seeks "copies of all sources and information relied upon by Dr. Gregory A. Brown to prepare the declaration" filed in support of Plaintiff's Motion for a Preliminary Injunction. (*Id.* at 8.) FAU responds that State Defendants already have such information, since Dr. Brown cited each of his sources in the body of his declaration, and also included

10

a lengthy bibliography.[5] (Doc. 50 at 6 n.1.) Given the scope and depth of Dr. Brown's declaration, as well as its potential impact on the merits of the parties' arguments, the Court finds good cause for expedited discovery consistent with Request for Production No. 1. The Court will not, however, require FAU to produce copies of all source material so long as those materials are properly identified.

Request for Production No. 2, however, suffers from some of the same flaws as many of the interrogatories State Defendants seek to propound. It requests copies of "any and all documents . . . relating in any manner to the subject matter of the Complaint." (Doc. 43-1 at 8.) At its essence, this is a request for all relevant documents in the case as a whole—before discovery commences. Such a request is too broad and inexact at this stage of the litigation. No good cause supports expedited discovery of this expanse.

In sum, expedited discovery is appropriate here, but in a very limited amount. State Defendants' may propound to FAU, and FAU only, Interrogatory No. 1 and Request for Production of Documents No. 1 from State Defendants' Discovery Requests to Plaintiff (Set 1) (*Id.* at 7-8.) Given the current briefing on the preliminary injunction motion and its rapidly approaching motion hearing date, FAU must respond to State Defendants' discovery no later than July 14, 2025. The Court cautions the parties that prompt cooperation is expected and that extensions to this deadline governing the limited, expedited discovery necessary here will be unlikely to be granted.

---

[5] Notably, FAU does not argue responding would be unduly burdensome in terms of scope or timing—likely because of its representation there is little (if any) responsive information beyond the corners of Dr. Brown's declaration itself.

## ORDER

Accordingly, based on all the files, records, and proceedings above, **IT IS ORDERED** that:

1. State Defendants' request for expedited discovery (Doc. 43) is **GRANTED IN PART** and **DENIED IN PART**; and

2. FAU must respond to State Defendants' discovery requests as limited by this Order **no later than July 14, 2025**.

Date: July 1, 2025

       *s/Douglas L. Micko*
       DOUGLAS L. MICKO
       United States Magistrate Judge