UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Female Athletes United, | File No. 25-cv-2151 (ECT/DLM) |
| Plaintiff, | |
| v. | **ORDER** |
| Keith Ellison, *in his official capacity as Attorney General of Minnesota*; Rebecca Lucero, *in her official capacity as Commissioner of the Minnesota Commission on Civil Rights*; Erich Martens, *in his official capacity as Executive Director of the Minnesota State High School League*; Willie Jett, *in his official capacity as the Minnesota Commissioner of Education*; Independent School District No. 11 School Board; Independent School District No. 192 School Board; and Independent School District No. 279 School Board, | |
| Defendants. | |

Plaintiff Female Athletes United ("FAU") objects to the Protective Order. FAU's objections all concern the same basic problem: the extent to which FAU (and Defendants) may publicly disclose information regarding a non-party minor whose athletic participation prompted this suit and information regarding FAU members who also are minors. In FAU's view, the Protective Order is unlawful because it lacks specificity making it difficult to confidently determine when it requires information to be sealed and because it forbids the disclosure of information that was public before the case was filed. FAU's objections will be sustained in part, and an Amended Protective Order will be entered.

As a legal and practical matter, any protective order must be clear as to what qualifies as protected confidential or non-public information and what does not. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 568 (1976) (holding an order limiting publication of information cannot be sustained due to vagueness); *cf. Hynes v. Mayor & Council of Oradell*, 425 U.S. 610, 620 (1976) (stating "in the First Amendment area government may regulate only with narrow specificity," because "[a]ll are entitled to be informed as to what the State commands or forbids." (citation modified)).

FAU fairly objects that the Protective Order does not meet this standard. For example, the Protective Order defines "Confidential Information" to include "information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty." ECF No. 42 at 4 ¶ 2(a) (referencing the categories of "Personally Identifiable Information" included in 34 C.F.R. § 99.3(a)–(f)). It is difficult to predict what information might fall in this category here. This is especially so given that extensive information regarding the non-party minor was public prior to this lawsuit's commencement. In other words, a small item of seemingly tangential information here might enable a hypothetical community member (or anyone else) to identify the non-party minor based on the publicly available information. Consistent with these concerns, Defendants did not—in the briefing in opposition to FAU's objections or at the hearing on July 29—articulate a clear, usable rule that would reliably separate Confidential Information from other public information. *See generally* ECF Nos. 55, 60. FAU's vagueness concern is reasonable.

Any protective order must also account for First Amendment principles. A protective order that seeks to restrict the disclosure of information obtained outside the discovery process constitutes a prior restraint on speech. *Stamy v. Packer*, 138 F.R.D. 412, 417 (D.N.J. 1990) (citing *Rodgers v. U.S. Steel Corp.*, 536 F.2d 1001, 1007 (3d Cir. 1976)); *Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 944–46 (2d Cir. 1983) (holding prohibition on disclosure of pre-discovery documents constituted a prior restraint on free speech); *see also Alexander v. United States*, 509 U.S. 544, 550 (1993) ("The term prior restraint is used 'to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur.'" (internal quotation omitted)). An order that "targets speech based on its communicative intent" that is, "restrict[s] discussion of a subject matter or topic," is a content-based speech restriction. *Vidal v. Elster*, 602 U.S. 286, 292–93 (2024) (citation modified). Both prior restraints and content-based restrictions are presumptively unconstitutional and must satisfy strict scrutiny. *Cap. Cities Media, Inc. v. Toole*, 463 U.S. 1303, 1305–06 (1983) (prior restraint); *Vidal*, 602 U.S. at 293 (content-based speech restriction); *see also Doe v. Bell*, 969 F.3d 883, 888 (8th Cir. 2020); *Sindi v. El-Moslimany*, 896 F.3d 1, 31–32 (1st Cir. 2018); *Minneapolis Star & Trib. Co. v. U.S. Dep't of Interior*, 623 F. Supp. 577, 578 (D. Minn. 1985) (noting "[t]he First Amendment requires the highest form of state interest to sustain restrictions" on information that was "not gained only by virtue of the trial court's discovery process." (citation modified)). To pass strict scrutiny, an order must be "narrowly tailored to serve compelling state interests." *Bell*, 969 F.3d at 888 (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). As the Eighth Circuit

3

has explained, "strict scrutiny is best described as an end-and-means test, and as a result, [a court] must first have a clear understanding of what the state's interest may be before deciding whether the purported interest is indeed a compelling state interest." *Bell*, 969 F.3d at 889 (citation modified).

How these concerns weighed in the Protective Order's entry are not clear. Regardless, because the Amended Protective Order will prohibit the parties from disclosing certain information obtained outside discovery, it is a content-based, prior restraint on speech and must withstand strict scrutiny.[1]  This is a fact-intensive inquiry. *See Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 607–08 (1982); *see also*

---

[1] Defendants argue strict scrutiny does not apply when a protective order is limited to the parties. ECF No. 55 at 6; ECF No. 60 at 6–7 & n.2. The speech of lawyers litigating before a court may be regulated under a lower standard than strict scrutiny. *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1074 (1991) ("[T]he speech of lawyers representing clients in pending cases may be regulated under a less demanding standard than that established for regulation of the press . . . ."). However, *Gentile* does not necessarily apply to *all* case participants, only lawyers. *See id.*; *see also In re Dan Farr Prods.*, 874 F.3d 590, 593 n.3 (9th Cir. 2017) (noting the Ninth Circuit's "recognition that a lower standard applies to prior restraints of *attorneys* participating in a case, who are officers of the court subject to fiduciary and ethical obligations, does not apply to non-attorney participants"). Though several circuits have held a lower standard may apply to trial participants (including non-lawyers) in *criminal* cases, *see United States v. Brown*, 218 F.3d 415, 426–27 (5th Cir. 2000) (collecting cases), it seems those courts have held as much based—at least in part—on the Sixth Amendment right to a fair trial, *see In re Russell*, 726 F.2d 1007, 1009–10 (4th Cir. 1984); *United States v. Tijerina*, 412 F.2d 661, 666–67 (10th Cir. 1969); *Brown*, 218 F.3d at 427; *see also Sheppard v. Maxwell*, 384 U.S. 333 (1966). It does not follow that the same standard necessarily applies to civil cases. It is true, however, that at least one circuit has held that when a prior restraint is limited to case participants—*i.e.*, lawyers and parties before the court—in a civil case, a standard slightly more deferential than strict scrutiny still applies. *See Marceaux v. Lafayette City-Par. Consol. Gov't*, 731 F.3d 488, 493–94 (5th Cir. 2013) (applying a "substantial likelihood of prejudice" standard to participants in a civil matter). Applying this lower standard would not change the outcome here.

4

*Webster Groves Sch. Dist. v. Pulitzer Pub. Co.*, 898 F.2d 1371, 1375–76 (8th Cir. 1990). Several concerns are in play here. "'[S]afeguarding the physical and psychological well-being of a minor' is a 'compelling' state interest," particularly "where sensitive and possibly stigmatizing matters are concerned." *Webster Groves*, 898 F.2d at 1375 (quoting *Globe Newspaper*, 457 U.S. at 607). For this reason, the default approach is to protect the identity of minors associated with any case. *See* Fed. R. Civ. P. 5.2(a) (requiring any minor be identified by their initials); *see also Green v. Winona Montgomery Consol. Sch. Dist.*, No. 4:21-CV-32-DMB-JMV, 2021 WL 1723226, at *3 (N.D. Miss. Apr. 30, 2021) (noting the "compelling interest of protecting a minor child's identity."); *Mears v. Atl. Se. Airlines, Inc.*, No. 5:12-CV-613-F, 2014 WL 5018907, at *3 (E.D.N.C. Oct. 7, 2014) ("Courts have held that compelling governmental interests require the sealing of documents relating to minors in general and the sealing of sensitive medical information in particular." (citations omitted)). One of the minors is transgender, and numerous cases hold that transgender status itself may be confidential or private information. *Doe ex rel. Doe v. Walters*, No. CIV-24-34-R, 2024 WL 559714, at *2 (W.D. Okla. Feb. 12, 2024) ("Defendants liken transgender status to 'routine personal information' that does not enjoy a presumption of privacy such as sex, height, weight, and eye-color. But these outward facing characteristics are not equivalent comparisons to an individual's decision to present as a gender different than the biological sex assigned at birth."); *Foster v. Andersen*, No. 18-2552-DDC-KGG, 2019 WL 329548, at *2 (D. Kan. Jan. 25, 2019) ("[T]he disclosure of C.K.'s identity would reveal matters of a highly sensitive and personal nature, specifically C.K.'s transgender status and his diagnosed medical condition—gender dysphoria. Indeed, other courts have

recognized the highly personal and sensitive nature of a person's transgender status and thus have permitted transgender litigants to proceed under pseudonym." (citations omitted)).  And all the minors are non-parties, heightening the interest in maintaining confidentiality.  *Vang v. Ashby*, No. 1:18CV565, 2020 WL 5764388, at *3 (M.D.N.C. Sept. 28, 2020) (citation omitted).  These concerns must be carefully balanced with the fact that several pre-suit articles (cited in FAU's objections) have already disclosed one of the minors' full name, birth name, school of attendance, school year, and other information.  ECF No. 53 at 3.  Much of this information is widely known throughout that minor's community and nearby communities.  *See, e.g., Garedakis v. Brentwood Union Sch. Dist.*, No. 14-cv-04799-PJH (DMR), 2015 WL 1906138, at *3 (N.D. Cal. Apr. 27, 2015), *as amended* (Apr. 28, 2015) ("To the extent that materials are in the public domain, they are already accessible to the public.  No interest will be served by prohibiting the public from accessing those materials in this lawsuit.").  Furthermore, this case concerns "matters of profound value and concern to the public." *Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31*, 585 U.S. 878, 914 (2018) (citation modified).  There are, in other words, significant First Amendment and common-law public-access issues in play.

      Considering these circumstances, I think the better answer is to enter what is substantially the District's form protective order, but with limited modifications that guard against the disclosure of additional information.  The modifications will prohibit the parties from disclosing medical records; educational records and data; the school a minor attends; the name of a minor's sports team; the class, section, or conference in which a minor's sports team competes; the honors or awards conferred on a minor; and a minor's individual

public placement or ranking based on athletic performance. To be clear, these prohibitions will apply to information obtained in discovery and public information obtained outside the discovery process. In my judgment, these modifications strike a lawful and appropriate balance. The modifications' primary objective is modest but important. In filed declarations, the non-party transgender minor and her parents have testified that they already have endured significant harassment. It is reasonable to forecast that the minor FAU members who participate in the case, and perhaps their families, may also experience harassment. It therefore seems important that a protective order limit additional disclosures that would make it relatively easy for the public to identify the non-party minors and expose them and their families to harassment. The public facts to which the disclosure limitations apply are the schools the minors attend; the name of a minor's sports team; the class, section, or conference in which a minor's sports team participates; the honors or awards granted to a minor; and a minor's individual public placement or ranking based on athletic performance. This information is deemed confidential because it—alone or in combination with other public facts—easily leads to the identification of the non-party minors. For example, high school varsity softball rosters have roughly eighteen individuals and are generally public. *See Official Handbook*, Minnesota State High School League, https://www.mshsl.org/mshsl-handbook-governance-documents (last visited Aug. 4, 2025) (click on "Official Squad Size") (limiting softball official squad size to eighteen players). If the schools attended by the minors—or, given the parties' extensive discussion of competition results, the class, section, or conference in which a minor's team competes— were public, any interested observer could readily identify a group of approximately

7

eighteen individuals, one of whom would be a non-party minor. That, in combination with the minor's initials, would lead to the identification of a non-party minor. Similarly, the honors and awards won by any of the non-party minors would likely lead to identification of that minor because the honors and awards mentioned in FAU's filings are given to a small group of individuals. This logic also applies to public placements or rankings of the minors, which often pinpoint a single individual. At the same time, the modifications strike a fair balance between these concerns and the First Amendment and right-of-access concerns that cut in the other direction. The modifications in no way prohibit FAU, for example, from describing the non-party transgender minor as a "dominant" or "stellar" athlete—in other words, using generic-but-accurate descriptions that fairly describe the individual's athletic prowess.

The Protective Order required the temporary sealing of "the Complaint . . . and the Memorandum of Law in Support of Plaintiff's Motion for a Preliminary Injunction and its accompanying exhibits," but directed the parties to "meet and confer regarding the appropriate scope of sealing." ECF No. 42 at 7 ¶ 9. It is not obvious what disputes might remain now that the Amended Protective Order has been entered. The parties are directed to file an updated joint motion for continued sealing no later than seven days after the date this Order is filed.

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Plaintiff Female Athletes United's Objections to the Protective Order [ECF No. 53] are **OVERRULED IN PART** and **SUSTAINED IN PART**.

2. The Amended Protective Order will be entered.

Dated: August 4, 2025

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court