# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

**Female Athletes United**,

   Plaintiff,

  v.

**Keith Ellison,** in his official capacity as Attorney General of Minnesota; **Rebecca Lucero,** in her official capacity as Commissioner of the Minnesota Commission on Civil Rights; **Erich Martens,** in his official capacity as Executive Director of the Minnesota State High School League; **Willie Jett,** in his official capacity as the Minnesota Commissioner of Education; **Independent School District No. 11 School Board; Independent School District No. 192 School Board; Independent School District No. 279 School Board,**

   Defendants.

Case No. 0:25-cv-02151-ECT-DLM

**Plaintiff's Memorandum in Support of its Emergency Motion for an Injunction Pending Appeal**

## INTRODUCTION

Respectfully, the Court should have granted Female Athletes United's preliminary-injunction motion. FAU's discrimination claims are disparate-treatment ones. Minnesota intentionally chose to disadvantage girls' sports—and only girls' sports. Plus, whether characterized as disparate-treatment or disparate-impact claims, Title IX allows claims like this in the sports context. The implementing regulations make that clear. And because those regulations were expressly presented to Congress and not altered, the Supreme Court has treated them as "authoritative expressions" of the "scope and purpose" of Title IX. *N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 535 (1982) (citation modified). What's more, time and again, courts—including the Eighth Circuit—have upheld and applied those regulations. This Court was bound to do the same.

Likewise, the Court was wrong to hold that FAU has not shown its claims are likely to succeed. There's no need to get into all the regulations' factors. By definition and design, girls do not have an equal opportunity under Minnesota's policy. Boys get to compete on an even playing field, but girls don't. That's as unequal as it gets.

And girls are about to face that inequality. Now that the Court has denied the preliminary injunction, FAU's members are poised to unfairly compete against a male athlete this coming softball season. That harm is irreparable. And the Eighth Circuit won't have time in the ordinary appellate process to course correct before that harm occurs. The Court should therefore grant an injunction pending appeal.

# ARGUMENT

Whether to grant an injunction pending appeal involves the same inquiry as whether to grant a preliminary injunction. *Missouri v. Biden*, 112 F.4th 531, 536 (8th Cir. 2024). A court considers the likelihood of success on the merits, irreparable harm, the balance of the equities, and the public interest. *Id.* As usual, likelihood of success is the most important factor. *Id.* So start there before considering the others.

## I.    FAU is likely to succeed on the merits.

The Court's merits analysis missed the mark. It held that FAU brought only disparate-impact claims, that Title IX allows only disparate-treatment claims, and that FAU hasn't shown disparate impact. Op. & Order 42, 46, 57, Dkt. No. 134. Each is incorrect.

### A.    The Court was wrong to view FAU's claims as only alleging disparate impact.

First, FAU's discrimination claims, at a minimum, cover disparate treatment. The claims include the argument that Minnesota intentionally discriminated against females. For example, the complaint alleges that the Minnesota State High School League or MSHSL chose to open "up girls' teams to male participation despite males' marked physiological advantages." Compl. ¶ 181, Dkt. No 1. That alleges that MSHSL intentionally discriminated against females. And FAU's pleadings confirm that it alleges differential treatment. *See, e.g.*, Prelim. Inj. Mem. 17, Dkt. No. 7 (arguing that "the law prohibits 'differential treatment'" (citation omitted)).

And make no mistake, Minnesota did intentionally discriminate. Consistently, courts have held that decisions affecting girls' teams—no matter whether boys' teams were also affected—fall under intentional discrimination. *See, e.g.*, *Mayerova v. E. Mich. Univ.*, 346 F. Supp. 3d 983, 990 (E.D. Mich. 2018) (collecting cases). In fact, the Eighth Circuit has recognized discrimination under Title IX when both boys' and girls' teams were affected by program cuts—even when a university cut *more* boys teams than girls teams. *See Portz v. St. Cloud State Univ.*, 16 F.4th 577, 579 (8th Cir. 2021). But here, the boys' teams *weren't* affected.

To be sure, Minnesota's policy change in 2015 is cast as applying to both boys' and girls' sports: all students may participate according to their gender identity. Compl. ¶ 132. But in practice, that affected only girls' teams. Since 1981, Minnesota's state analog to Title IX has required that boys' teams (that is, teams not designated for the sex whose athletic opportunities were historically limited) be open to all comers. 1981 Minn. Laws 1544, Ch. 339, H.F. No. 817. A girl could choose to play on them if she wanted to and was good enough. So the policy's only change was to allow certain boys to play on girls' teams. In other words, Minnesota intentionally acted in a way that harmed only women. It cannot hide behind the language applying to all teams, when the only teams affected are girls' ones. *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 303–04 (2023) (Gorsuch, J., concurring). That's disparate treatment. *Cf. Biediger v. Quinnipiac Univ.*, 691 F.3d 85, 97–98 (2d Cir. 2012) ("A school's decision to provide students with athletic participation opportunities through separate

3

sports programs for each sex thus necessarily raises a disparate treatment rather than disparate impact claim . . . .").

Plus, Minnesota knew of its discriminatory actions. It knew that its actions harmed girls—and only girls—and it intentionally chose to continue the policy. *See* Compl. 35–38. That deliberate indifference also qualifies as intentional discrimination. *See Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011); *Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 583 (7th Cir. 2014). That's disparate treatment twice over.

And FAU is likely to succeed on those disparate-treatment claims— which sound both in Title IX's text and in its regulations. Title IX expressly bars funding recipients from "den[ying] the benefits of" or "subject[ing] to discrimination" any person. 20 U.S.C. § 1681(a). And the regulations expressly require funding recipients to "provide equal athletic opportunity for members of both sexes." 34 C.F.R. § 106.41(c). The two are consistent, which is why court after court has rejected arguments based on *Alexander v. Sandoval*, 532 U.S. 275 (2001), to construe the regulations as articulating a disparate-impact standard. *See, e.g.*, *Equity in Athletics, Inc., v. Dep't of Educ.*, 639 F.3d 91, 103 (4th Cir. 2011). Under any of those measures, choosing to treat girls worse than similarly situated boys because of their sex, and being deliberately indifferent to doing so, is intentional discrimination.

### B.  The Court was wrong to disregard the regulations based on *Sandoval* even if the claims are for disparate impact.

Second, it makes no difference if the Court was right that the claims allege only disparate impact. However characterized, Title IX allows a plaintiff

to bring claims like these in the sports context. True, Title IX was patterned after Title VI. But the statutes are not the same. For one thing, sex and race are different. That's why in the equal-protection context different levels of review attach to race- and sex-based classifications. And it's why Title IX's text expressly permits "consideration of sex-based disparities in Title IX enforcement actions." *Equity in Athletics, Inc.*, 639 F.3d at 102 (citing 20 U.S.C. § 1681(b)). After all, schools can and sometimes must have sex-specific teams under Title IX, but states can never have race-specific programs under Title VI. That means *Sandoval*'s gloss of Title VI as not permitting disparate-impact claims does not squarely apply to Title IX—at least not in the sports context. Title VI does not include the necessary rights-creating language to permit a disparate impact claim. "Neither as originally enacted nor as later amended does Title VI display an intent to create" that private right of action. *Sandoval*, 532 U.S. at 293. But Title IX is different.

Indeed, Congress itself directed the Department of Education's predecessor to issue regulations implementing Title IX for sports, which is why we have 34 C.F.R. § 106.6. And the agency expressly provided a window for Congress to review and reject those regulations. *See N. Haven Bd. of Educ.*, 456 U.S. at 531–32. Congress duly reviewed and allowed them to take effect. *Id.* Plus, it has amended Title IX since, yet it hasn't touched the sports regulations. All of that adds up to clear evidence that the sports regulations are authoritative. *Id.* at 535; *see also Cohen v. Brown Univ.*, 991 F.2d 888, 895 (1st Cir. 1993). Those longstanding, presumptively authoritative regulations expressly require funding recipients to "provide equal athletic opportunity for

members of both sexes." 34 C.F.R. § 106.41(c). And courts have consistently upheld and applied those regulations—including the Eighth Circuit. *See, e.g.*, *Equity in Athletics*, 639 F.3d at 102; *Portz*, 16 F.4th at 580. For good reason: Executive Branch interpretations "issued roughly contemporaneously with enactment of the statute" and that remain "consistent over time" deserve great "respect." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024).

No doubt, sometimes failing to provide equal opportunity can show intentional discrimination. *See, e.g.*, *Barrett v. W. Chester Univ. of Penn. of State Sys. of Higher Educ.*, No. Civ. A. 03-CV-4978, 2003 WL 22803477, at *13 (E.D. Penn. Nov. 12, 2003). As explained above, that's what happened here. But sometimes failing to provide equal opportunity might be better classified as a disparate-impact claim. *See Biediger*, 691 F.3d at 98 n.5. A school could cut several sports teams for both boys and girls. It could act only to save money. But if the result is unequal opportunity for girls given the remaining teams, that's still actionable discrimination under Title IX. In fact, that looks a lot like the situation in *Portz*, where the Eighth Circuit upheld a Title IX violation based on inequitable participation opportunities. 16 F.4th at 579, 583. Put differently, under the Court's theory, case after case is wrong in applying 34 C.F.R. § 106.41 because the regulations go beyond the statute and so violate the APA. Decades of precedent allowing private-enforcement actions just like this would be incorrect. But that view conflicts both with the Supreme Court's approval and the Eighth Circuit's application of the regulations—an application this Court was bound to follow.

6

### C.   The Court was wrong to hold the claims unlikely to succeed even if they allege disparate impact.

Third, the Court was wrong to hold that FAU is not likely to succeed on its claims even if best characterized as disparate-impact ones. The facts here do not require a detailed weighing of the listed factors in 34 C.F.R. § 106.41(c). Indeed, the provision itself contemplates considering other factors. *Id.* And here, the inequality is as plain as it gets. Boys get to compete on an even playing field; girls are forced to compete on an uneven one. Girls have to compete against a male athlete, who is physically in a different bucket from them. And the result extends beyond just that unfair game. The losing girls' teams will have lower rankings, less public recognition, and less chance for awards and scholarships. By definition, that is an unequal opportunity. *See McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 296 (2d Cir. 2004); *Chalenor v. Univ. of N.D.*, 291 F.3d 1042, 1048 (8th Cir. 2002). Add to that the Court's assuming the fair-chance-of-prevailing standard applies, and that fact alone means FAU is likely to succeed on the merits—no matter how the claims are characterized. *See* Op. & Order 36.

## II.   The other factors favor granting an injunction pending appeal.

Turn to the other factors. First, FAU's members will suffer irreparable harm without an injunction pending appeal. Given the Court's denial of a preliminary injunction, FAU's members will be forced to compete against the male athlete while the appeal runs its course. Softball season starts in April. That likely does not leave enough time for briefing, oral argument, and a preliminary-injunction decision from the Eighth Circuit. So without an injunction pending appeal, FAU's members and other female athletes will have to

compete on an uneven playing field. And that harm is irreparable. *See Ng v. Bd. of Regents of Univ. of Minn.*, 64 F.4th 992, 998 (8th Cir. 2023). There's no getting back playing a fair game or having a fair season after they're over.

Second, the final two factors merge here. *Eggers v. Evnen*, 48 F.4th 561, 564–65 (8th Cir. 2022). And the public interest favors FAU. It favors correctly enforcing Title IX and providing women equal athletic opportunities. There's no need for the Court to assess the policy interests at stake. *See* Op. & Order 65. Congress has already done that. And rightly so: girls are entitled to a fair playing field no less than boys.

## CONCLUSION

The Court should grant an injunction pending appeal.


Respectfully submitted this 26th day of September, 2025.


By: /s/ Henry W. Frampton, IV

Renee K. Carlson                          Jonathan A. Scruggs*
Minnesota Bar No. 0389675                 Arizona Bar No. 030505
Douglas G. Wardlow                        Henry W. Frampton, IV*
Minnesota Bar No. 0339544                 South Carolina Bar No. 75314
True North Legal                          Alliance Defending Freedom
525 Park Street, Suite 460                15100 N. 90th Street
St. Paul, MN 55103                        Scottsdale, Arizona 85260
(612) 789-8811                            (480) 444-0020
rcarlson@truenorthlegalmn.org             (480) 444-0028 (facsimile)
dwardlow@truenorthlegal.org               jscruggs@ADFlegal.org
                                          hframpton@ADFlegal.org

                                          Rory T. Gray*
                                          Georgia Bar No. 880715
                                          Alliance Defending Freedom
                                          1000 Hurricane Shoals Road  NE

Suite D-1100
Lawrenceville, Georgia 30043
(770) 339-0774
(770) 339-6744 (facsimile)
rgray@ADFlegal.org

Suzanne E. Beecher*
California Bar No. 329586
Alliance Defending Freedom
440 First Street NW, Suite 600
Washington, D.C.
(202) 393-8690
(202) 347-3622
sbeecher@ADFlegal.org

*Admitted Pro Hac Vice

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of September, 2025, I electroni-cally filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record who are registered users of the ECF system.

/s/Henry W. Frampton, IV
Henry W. Frampton, IV

Attorney for Plaintiffs